```
                                              ┌─────────────────────────────────┐
                                              │ USDC SDNY                       │
                                              │ DOCUMENT                        │
UNITED STATES DISTRICT COURT                  │ ELECTRONICALLY FILED            │
SOUTHERN DISTRICT OF NEW YORK                 │ DOC #: _____          │
------------------------------------X         │ DATE FILED: September 28, 2011  │
BRANDON COLE,                       :         └─────────────────────────────────┘
                                    :
                 Plaintiff,         :
                                    :         10 Civ. 7523 (JFK) (RLE)
     -against-                      :
                                    :           **OPINION AND ORDER**
PEARSON EDUCATION, INC.,            :
                                    :
                 Defendant.         :
------------------------------------X
```

APPEARANCES:

    For Plaintiff Brandon Cole:
        NELSON & McCULLOCH LLP
         By: Daniel A. Nelson, Esq.
            Kevin P. McCulloch, Esq.

    For Defendant Pearson Education, Inc.:
        MORGAN, LEWIS & BOCKIUS LLP
         By: Namita E. Mani, Esq.
            Shana R. Cappell, Esq.
            J. Gordon Cooney, Jr., Esq.
            David W. Marston, Jr., Esq.
            Ezra Dodd Church, Esq.

**John F. Keenan, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

Plaintiff Brandon D. Cole ("Cole" or "Plaintiff") brings this suit for money damages, injunctive relief, and attorneys' fees resulting from defendant Pearson Education, Inc.'s ("Pearson" or "Defendant") alleged infringement of Cole's copyright in certain photographs.  Before the Court is Pearson's motion to dismiss Cole's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Pearson contends that dismissal is required with respect to all of Cole's claims because Cole agreed to arbitrate these claims.  Pearson also argues that claims with respect to two works must be dismissed because the complaint does not allege the registration of two of the photographs with the United States Copyright Office.[1]  For the reasons that follow, the motion to dismiss is granted.

## I.   Background

The facts below are taken from the complaint (the "Complaint") and from the exhibits attached to the Complaint, and are assumed to be true for the purposes of deciding the motion to dismiss.  Additionally, because the complaint "relies heavily upon . . . the terms and effect," of certain exhibits provided by the Defendant but not attached to the Complaint, the

---

[1] These works are "Baleen Whale," which is listed below as the eighth work on page 3, and "Aggregating Anemones," which is listed below as the ninth work on page 3.

Court deems these exhibits "integral to the complaint." See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002), and considers these documents in deciding the instant motion to dismiss.

**A.   The Parties**

Cole is a professional photographer and a resident of the State of Washington. (Compl. ¶¶ 1, 6.)  Pearson is a Delaware Corporation with its principal place of business in New Jersey. (Id. ¶ 2.)  Pearson creates and publishes "educational textbooks, instructional technology materials, reference works, and other similar materials and publications." (Id. ¶ 7.)

**B.   Works Allegedly Infringed**

Cole claims to be the registered owner of copyrights in the following photographs and collections of photographs:

(1)   "Sockeye Salmon" (Referred to in the Complaint as "mb42," "mb42, 44-03\Sockeye salmon," and "mb42, 44-03\AAIJRFK0\Sockeye salmon," and registered as "Brandon D. Cole marine life photo collection : no. 2", No. VAu000465978 on Dec. 13, 1999.) (Compl. ¶¶ 23, 32, 62, Ex. 5);
(2)   "Humpback #1" (Referred to in the Complaint as "ge970, CO-21\Humpback Whale" and "ge970, CO-21\AAIMYVS0\Humpback Whale" and registered as "[Humpback whale pictures in Wildlife specials book published by Trident Press]", No. VA0001002048 on Jan. 3, 2000.) (Compl. ¶¶ 15, 17, 44, 56, Ex. 4);
(3)   "Collection No. 4" (Referred to in the Complaint as "lf4619" and registered as "Brandon D. Cole Marine life photo collection: no. 4", No. VAu000491190 on Mar. 20, 2000.) (Compl. ¶¶ 10, 13, Ex. 2);
(4)   "Intertidal Zonation" (Referred to in the Complaint as "JZ-1799, Intertidal zonation" and registered as "Marine life photo collection : no. 5 / Brandon D.

-2-

        Cole", No. VAu000498124 on June 28, 2000.) (Compl.
        ¶¶ 26, 29, Ex. 7);
(5) "Collection No. 6" (Referred to in the Complaint as "lo7179", and registered as "Brandon D. Cole Marine life photo collection: no. 6", No. VAu000507555 on Nov. 22, 2000.) (Compl. ¶¶ 10, 14, Ex. 3);
(6) "Humpback #2" (Referred to in the Complaint as "km2084" and registered as "Humpback Whale:  No. KM-2084", No. VA0001205144 on April 3, 2004.) (Compl. ¶¶ 10, 12, Ex. 1);
(7) "Hector's Dolphins" (Referred to in the Complaint as "pd70528-D, Hector's dolphins" and registered as "Brandon Cole photos collection : no. 29", No. VAu000677507 on Sept. 21, 2005.) (Compl. ¶ 23, Ex. 6);
(8) "Baleen Whale" (Referred to in the Complaint as "ge970, 41-06\A baleen whale," "GE-970, a baleen whale," and "ge970, 41-06\AACGJQY0\A baleen whale," but no registration information is provided.) (Compl. ¶¶ 20, 31, 62, 76, 83); and
(9) "Aggregating Anemones" (Referred to in the Complaint as "HU-690, Aggregating Anemones," but no registration information is provided.) (Compl. ¶ 90).

According to Cole, Pearson infringed his copyrights in the works listed above at various times between 2005 and 2010, sometimes publishing his photographs without any valid license and sometimes exceeding print run limitations of license agreements. (Compl. ¶¶ 101-12 (describing elements of "late permissioning" claims); ¶¶ 113-21 (describing elements of "print overrun" claims).)

Pearson has obtained licenses for all of the above works at some point over the same period from 2005 to 2010. (See Compl. Exs. 11-15; Declaration in Support Exs. A-D.)  Cole argues that any licenses obtained by Pearson after the publication of his works--and the arbitration clauses therein--are invalid because

-3-

they were "obtained by [Pearson] under intentionally false and misleading circumstances." (Compl. ¶ 39.)  Cole's infringement allegations therefore fall into two categories, consisting of claims that Pearson:  (1) infringed certain copyrights and retroactively obtained permission to copy the works (the "late permissioning" claims); and (2) possessed valid licenses for certain copyrighted works, but exceeded the limitations on the number of copies permitted under the licenses (the "print overrun" claims).

    In or around 2005, Cole alleges that Pearson violated his copyrights in "Intertidal Zonation," "Aggregating Anemones," and "Baleen Whale."  Pearson's eighth edition of Essentials of Oceanography, published in 2005, contained the photograph "Intertidal Zonation," despite Pearson's alleged lack of permission to reproduce this photograph at the time of publication. (Compl. ¶¶ 26-27.)  Pearson allegedly committed a "print overrun" infringement when it obtained permission to reproduce "Aggregating Anemones" in a CD-ROM associated with the 2005 edition of Miller and Levine's Biology, but exceeded the print run limitation in its license by publishing more than 5,000 copies of that CD-ROM. (Compl. ¶¶ 90-97.)  According to Cole, Pearson published copies of "Baleen Whale" in the seventh edition of its textbook BIOLOGY without obtaining a license prior to publication. (Compl. ¶¶ 31-32.)  Cole also claims that

when Pearson did obtain a license to publish "Baleen Whale" in the seventh edition of BIOLOGY, Pearson violated the terms of the license by publishing more than 200,000 copies. (Compl. ¶¶ 76-82.)

In or around 2008, Cole alleges that Pearson violated his copyrights in "Baleen Whale," "Sockeye Salmon," "Hector's Dolphins," and "Intertidal Zonation."  Pearson published "Baleen Whale," "Sockeye Salmon," and "Hector's Dolphins" in the eighth edition of BIOLOGY in 2008 without obtaining prior permission. (Compl. ¶¶ 23-24.)  Cole also alleges that "Baleen Whale" and "Sockeye Salmon" were reproduced without permission in the instructor's materials to the eighth edition of BIOLOGY (Compl. ¶¶ 20-21.)  After obtaining a license to publish "Baleen Whale" and "Sockeye Salmon" in the eighth edition of the BIOLOGY textbook, Pearson allegedly exceeded the print run limitation in the license agreements by printing more than 300,000 copies. (Compl. ¶¶ 62-68.)  Cole claims "Intertidal Zonation" was published for a second time in 2008, again without his permission, in the ninth edition of Essentials of Oceanography. (Compl. ¶¶ 29-30.)  Although Pearson eventually obtained permission to use "Intertidal Zonation" in its 2008 publication of Essentials of Oceaography, it allegedly exceeded the print-run limitation under the license agreement between Cole and Pearson. (Compl. ¶¶ 69-75.)

In or around 2009, Pearson published the sixth edition of Biology: Concepts & Connections and instructor's materials related to this textbook.  These publications contained copies of "Humpback #1," despite Pearson's alleged failure to obtain permission to publish that photograph in these publications. (Compl. ¶¶ 15-16, 18-19.)  In another section of the Complaint, Cole asserts that Pearson did in fact have a license to publish "Humpback #1" in the 2009 editions of the Biology: Concepts & Connections textbook and instructor's materials, but that Pearson exceeded the print-run limitation of the license and applicable extensions by publishing more than 200,000 copies of the textbook and more than 20,000 copies of the instructor's materials. (Compl. ¶¶ 44-61.)

In 2010, Pearson published Miller Levine Biology 2010.  In doing so, it published copies of Humpback #2, Collection No. 4, and Collection No. 6 without permission. (Compl. ¶¶ 10-11.)

**C.   The License Agreements**

Pearson licensed "Intertidal Zonation" on September 21, 2004, and again on April 5, 2007. (Decl. in Supp. Ex. D; Compl. Ex. 12.)  The latter invoice contains a notation stating that the fee charged "reflects a 15% discount for re-use of this photo, first published in 8th edition of the same title." (Compl. Ex. 12.)

Pearson licensed "Aggregating Anemones" on September 24, 2004. (Compl. Ex. 15.)  Though the parties have supplied only one invoice that mentions "Aggregating Anemones," this invoice contains a notation that the license fee paid "reflects [a] discount for secondary use of this photo." (Id.)

Pearson licensed "Baleen Whale" four times:  twice on January 29, 2005, for use in the seventh edition of BIOLOGY and the associated instructor's materials, and twice on November 3, 2008, for use in the eighth edition of BIOLOGY and the associated instructor's materials. (See Compl. Exs. 11, 13, 14; Decl. in Supp. Ex. B.)  Both the 2005 licenses and the 2008 licenses of "Baleen Whale" reflect the 15% "secondary use" discount. (Compl. Exs. 11, 13, 14; Decl. in Supp. Ex. B.)

Pearson licensed "Hector's Dolphins" on April 5, 2007 for use in the eighth edition of BIOLOGY. (Decl. in Supp. Ex. C.) Pearson licensed this photograph again on November 3, 2008, for use in the instructor's materials for the eighth edition of BIOLOGY. (Id. Ex. B.)  The November 3, 2008, invoice for the use of "Hector's Dolphins," reflects a 15% discount for the license being a secondary use. (Id.)  Pearson also licensed Cole's "Sockeye Salmon" photograph on November 3, 2008, for use in the eighth edition of the BIOLOGY textbook and the related instructor's materials. (Id.)

Pearson licensed "Humpback #1" three times: twice on September 3, 2008, for use in the sixth edition of <u>Biology: Concepts & Connections</u> and the associated instructor's resources, and once on December 15, 2008, for a print run extension for use in the sixth edition of <u>Biology: Concepts & Connections</u>. (Compl. Ex. 8-10.) Both of these invoice memoranda reflect a 15% discount for secondary use.

Pearson licensed "Sockeye Salmon" for use in the eighth edition of <u>BIOLOGY</u> and the associated instructor's resources on November 3, 2008. (Compl. Ex. 11; Decl. in Supp. Ex. B.)

On June 12, 2009, Pearson licensed "Collection No. 4," "Collection No. 6," and "Humpback #2" for use in the 2010 edition of <u>Miller & Levine Biology</u>. (Decl. in Supp. Ex. A.)

Each of the invoices containing the license agreements is printed on "Brandon Cole: <u>Marine Photographer</u>" stationery containing Cole's contact information. Although the invoices were printed on two different versions of Cole's invoice forms--1.2.04 and 3.15.06--both versions of the invoice forms contain an identical arbitration clause. (<u>See</u> Compl. Exs. 8-15; Decl. in Supp. Exs. A-D.) This clause, which appears in ¶ 9 of the "Terms and Conditions" section of the invoices, states that:

> Any dispute in connection with this stock picture invoice including its validity, interpretation, performance, or breach shall be arbitrated in Spokane, Washington pursuant to the rules of the American Arbitration Association and the laws of Washington.

-8-

> Judgment on the Arbitration award may be entered on
> the highest Federal or State Court having
> jurisdiction.

(See, e.g., Decl. in Supp. Ex. A.)  All of the invoices reflect that the parties agreed, unless expressly stated, that "any grant of rights is limited to one (1) year from the date hereof for the territory of the United States and such rights are one-time, non-exclusive, English language only, USA editorial print (on paper) reproduction rights only." (See, e.g., Id.)

## II.  Motion to Dismiss Claims Subject to Arbitration

Defendant moves to dismiss all of Cole's claims for copyright infringement as precluded by binding arbitration clauses.  For the reasons discussed below, Defendant's motion is granted.

### A.  Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the enforceability of arbitration clauses.  The United States Court of Appeals for the Second Circuit has held that the FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004).  The FAA requires federal courts to uphold and enforce "privately made agreements to arbitrate" as they would any other contract. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985).

When two parties have entered into an agreement to arbitrate claims, a district court may "stay an action that is subject to arbitration until the arbitration is complete," or alternatively, exercise its "discretion to dismiss--rather than stay--an action when all of the issues in it must be arbitrated." <u>Borrero v. Ruppert Housing Co., Inc.</u>, No. 08 Civ. 5869, 2009 WL 1748060, at *3 (S.D.N.Y. June 19, 2009).  The determination of whether to dismiss or stay a claim governed by an arbitration clause depends on whether any "useful purpose will be served by granting a stay of [the] proceedings." <u>Berger v. Cantor Fitzgerald Secs.</u>, 967 F. Supp. 91, 96 (S.D.N.Y. 1997). A stay issued pursuant to Section 3 of the FAA must last "until such arbitration has been had in accordance with the terms of the agreement," but a stay may be vacated by a party's "default in proceeding with such arbitration." 9 U.S.C. § 3.

**B.   Enforceability of the Arbitration Clause**

The arbitration clause contained in the license agreements requires that the validity of the arbitration clause itself be determined by the arbitrator, yet Plaintiff challenges the arbitration clause on the grounds that the license agreements were "obtained . . . under intentionally false and misleading circumstances." (Compl. ¶ 39.)  Therefore, the Court must make a threshold determination as to whether Plaintiff's accusations of fraudulent inducement preclude arbitration of Plaintiff's

-10-

claims.  Plaintiff argues that both the license agreements and the arbitration clauses contained therein are invalid as a result of Defendant's failure to disclose prior, allegedly infringing acts at the time of the formation of the license agreements.

The arbitration clause does not become unenforceable by a challenge to the contract's validity.  The Supreme Court has defined "two types of validity challenges under [the FAA]," and in doing so held that challenges to "the contract as a whole," are distinguishable from "challenges of the agreement to arbitrate." Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2278 (2010).  An arbitration clause is not rendered invalid by a challenge to the contract as a whole. Id.  Without addressing the merits of Plaintiff's claim that Defendant's alleged "late permissioning" conduct constituted fraudulent inducement, such allegations clearly go to the validity of the contract as a whole and are not specific to the arbitration clause.  Indeed, Plaintiff drafted the forms containing the arbitration clause.  This is evident from the use of "Brandon Cole" stationery for the invoice forms containing the arbitration clause and the terms of the arbitration clause favorable to Cole.  Although a copyright holder might plausibly claim that he was fraudulently induced to grant a license in certain works to a publisher who failed to disclose prior

-11-

infringement of the works, it is implausible that a copyright holder was "fraudulently induced" into entering into an arbitration contract that he drafted by any misrepresentation about the publisher's past conduct.  Though arbitration agreements are not "unassailable," here there is no challenge to "the precise agreement to arbitrate at issue." Id.  Therefore, the Court considers the arbitration clause enforceable for purposes of deciding this motion to dismiss the claims in favor of arbitration.

**C.   Scope of the Arbitration Clause**

Although the arbitration clause is deemed enforceable for purposes of deciding the motion to dismiss, and federal policy strongly favors enforcement of agreements to arbitrate claims, JLM Indus., 387 F.3d at 171, the Court must address what issues presented in this action, if any, are within the scope of the arbitration clauses.  The determination of whether any issues in this action are subject to the arbitration clauses depends on the parties' intent when forming the license agreement, as reflected in the language of the arbitration clauses.  Copyright claims have been held to be out of the scope of an arbitration agreement where the arbitration clause included actions arising under a contractual agreement. Desktop Images, Inc. v. Ames, 929 F. Supp. 1339, 1345 (D. Colo. 1996).  In Desktop Images, the court found that it was reasonable to interpret an arbitration

clause as not including the copyright infringement action because "such action does not arise under the agreement," but rather arises under federal copyright law. Id.  By contrast, the arbitration agreement at issue in Kamakazi Music Corporation v. Robbins Music Corporation required the parties to arbitrate "any controversy or claim arising out of or relating to this agreement or the subject matter thereof, or the breach hereof." 684 F.2d 228, 229 (2d Cir. 1982) (emphasis added).

Like the clause at issue in Kamakazi Music, the arbitration clause at issue in this case is broad.  Included in the arbitration clause is the language "[a]ny dispute[s] in connection with the stock picture invoice including its validity, interpretation, performance, or breach shall be arbitrated." (Decl. in Supp. Ex. A.)  This language is much closer to the language in Kamakazi Music than that analyzed in Desktop Images.  Kamakazi Music is the controlling Second Circuit authority.  Unlike the arbitration clauses at issue in Desktop Images, the arbitration clause here includes disputes arising under the copyright law.  Defendant licensed all of the works claimed by the Plaintiff to have been infringed, and any dispute about the publication of the licensed photographs is a "dispute in connection" with the license agreements.  Therefore, dismissal of these claims is warranted so that arbitration may proceed.

-13-

While the claims are within the scope of the arbitration clause, the arbitration clause requires that the arbitrator determine whether these claims are subject to arbitration. Should Defendant refuse to arbitrate any of these claims after seeking their dismissal on the grounds that they must be arbitrated, Plaintiff may re-file his case.

Defendant also seeks dismissal of the claims relating to "Baleen Whale" and "Aggregating Anemones" because the complaint fails to allege the registration of the photographs with the United States Copyright Office. There is no need to address this in view of the ruling above requiring arbitration.

### III. Conclusion

For the reasons stated above, Pearson's motion to dismiss is granted and Cole's complaint is dismissed without prejudice. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:   New York, New York
         September 28, 2011

_____
JOHN F. KEENAN
United States District Judge